May it please the Court, I am Jeanette Alvarado and I represent Mr. Jose Peres-Peres. This case is about what conduct is punished by 8 U.S.C. 1326, the crime of reentry after deportation without permission. And I want to emphasize without permission, which in the statute is technically known as without advance consent, because that is what is at issue here today. The crime that Mr. Peres-Peres was convicted of was not simply reentering the United States or reentering it after being deported, but reentering it after being deported without having permission. 8 U.S.C. 1326a to b is a portion of that statute that has written into it what I like to call either an exception to prosecution or an affirmative defense for a defendant facing prosecution under that statute. And that allows aliens who either received permission, advance consent, or can establish that they did not need to gain advance consent to be not prosecuted under that statute. That's for aliens who were denied admission and removed. And that's what I'm referring to.  that I'm referring to. Kennedy. Yes, that is the section I'm referring to, Judge Reinhart. Yes. But that doesn't apply to your client, does it? Your Honor, actually, I believe that it does. And the reason I believe so is because Mr. Peres-Peres, when he was deported, that occurred in 1991. The term of art of removal didn't come into play until 1996, when there were many changes made to the Immigration and Nationality Act. There was always a difference between being denied admission and being removed after you were in the United States. Prior to 1996, the two ways that aliens could be taken out of the United States would be either via exclusion or via deportation. So that's correct, Your Honor. Okay. So this section that you just cited applies to those who were excluded. Our contention, Your Honor, is that they apply to both aliens who are denied admission under today's term, either denied admission or removed, or previously back in 1991 would have been aliens who had been excluded and or deported. But which category is your client in? The evidence that was presented at trial showed that Mr. Peres-Peres was deported. By what means he was deported, meaning was he excluded? So he doesn't fall in the category of denied admission? No, because that term of art did not come into play until 1996. Okay. Well, it would have been excluded then. Back then. Whether you call it excluded or denied admission was the same. Yes. Yes, Judge Reinhardt. But back before the change in law, one could say that excluded is now what's referred to as denied admission, and deported is what's referred to as removed. This section you've cited, 1326a-2b? Yes. That is a section I'm referring to. But that applies to people who were denied admission or in the former language excluded. And your client doesn't fall in that category? Well, Your Honor, Mr. Peres-Peres and the evidence submitted at trial was that he was deported. Yes. So why are we talking about b? Because deported, Your Honor, now is known as being removed. And so he was removed. And so that is why the exception at 1326a-2b applies to him. But b applies to an alien previously denied admission and removed. And he was removed. But he wasn't denied admission. Well, the evidence that was presented at trial was simply that he was deported. By what way he was deported, whether that be initially that he was arrested and deported or excluded and deported, was never presented. The warrant of deportation, which is the – I believe the form is I-205, basically shows that he was deported, which would now be the same thing now as being removed. And where does the case then of Gutierrez-Albas, which brings into the question of being arrested, come into play? You mean arrested and deported, Judge McKeon? Yes. Well, arrested and deported would happen to someone who was an alien who was already in the United States and thereafter actions were taken to have that person deported out of the country or physically removed out of the country. And you're saying we don't know whether he – He wasn't that? What I'm saying is that the evidence presented at trial was that he was deported. And there was no evidence as to whether he was arrested or excluded? I don't believe so, no. That's not my recollection of the evidence. In either case, when the judge granted the government's motion in limine and denied our motion to dismiss, what the trial court did is it basically prevented Mr. Betis-Betis from advancing his defense or his theory of the case, which was that because, as charged, he was allegedly deported in 1991 and then reentered unlawfully in 2007, that Mr. Betis-Betis should have been able to present then to the jury his defense, which is that because more – or 16 years had passed from the date of his deportation until the date of his unlawful reentry, alleged unlawful reentry, that he should have been able to present that he fit under the exception at 8 U.S.C. 1326a2b. And the trial court prevented Mr. Betis-Betis from advancing that defense wrongfully. Mr. Betis-Betis also submitted jury instructions asking that the court allow introduction of such evidence, and the trial court refused. And in refusing it basically held that 8 U.S.C. 1326a2b in essence wasn't really an exception or an affirmative defense whatsoever. It held, and the government argues in its brief, that an alien has to have advanced permission to come back and needs to get that advanced permission to come back at any time, and that is directly contrary to what the regulations, 8 CFR 212.2, as well as the civil portions of the Immigration and Nationally Act – Nationality Act, excuse me, require. How you get advanced consent, who needs advanced consent, what the procedure is, is not found within 8 U.S.C. 1326. It's found in the civil portions of the Immigration and Nationality Act, as it should be, because whoever decides whether someone can come back or when they come back is not decided by the criminal branch or law enforcement branch of the United States. It's decided by the Department of State, by the Attorney General, the civil agencies that are in charge with processing those type of applications. So when the government argues that the court is not to look at what does advanced consent mean or how does one get one, that is simply wrong. And also what it would do is it would strip any meaning whatsoever of that exception. We ask that the court state that the plain language of that exception listed there is what it says it is, which is that an alien who either has permission or shows that he doesn't need to get that permission to come back is not guilty of this crime. And Mr. Pettis-Bettis was prevented from his opportunity to show that to a jury, which is his right, when the government – I'm sorry, when the judge denied our motion, government – granted the government's motion the limine and prevented us from presenting supplemental jury instructions for our defense. And I'd like to reserve the rest of my time for rebuttal. Kennedy, may I ask a question before you? Yes, Judge. Thank you. My real problem in this case is that the prior law, as I understand it, made a clear distinction between persons that were excluded and deported as to whether they could use subsection B. And what is it that makes you think that there isn't that distinction under the present law? In part, Judge, because after the enormous changes that went through the immigration law in 1996 and early 1997, because of all the difficulties in applying different laws to those who are excluded or deported, and to simplify things, Congress saw fit to merge the two concepts of exclusion and deportation into one, which is now known as removal. Yes, but in this particular subsection, B, is there any legislative history that would indicate they intended to change that? I have looked for legislative history or anything, and the only legislative history that we could find was that initially, back before 1991, I want to say before 1982, any alien who had been deported or excluded had to always seek permission before attempting to come back, before reapplying for admission. And I believe I've submitted as part of my excerpts that the consulates were saying that that became too cumbersome, because once someone had been out of the United States for a certain period of time, they saw no need for that alien to request permission. And so they requested changes, which were then implicated when the law changed and which applied to Mr. Fetis-Fetis, I believe in 1982, that instead of always requiring at any point in time for someone excluded or deported to seek advanced consent, if that period of time had passed, then if a person had been out for five years, that alien did not have to show, did not have to apply for that advanced  Thank you, Your Honors. Thank you, counsel. May it please the Court. My name is Cassie Wu, and I represent the United States in this matter. Three of the four issues in this case hinge on one question. Was the defendant eligible to assert the affirmative defense in Section 1326A2B that he was not required to obtain the advanced consent of the Attorney General prior to reapplying for admission to the United States? And the short answer to that question is no. The defendant was not eligible to assert that affirmative defense. Initially, the government disagrees with the position set forth by appellant that Section 1182 places a time limitation on the requirement of the defendant to get the advanced consent under Section 1326. However, this Court does not need to reach that issue today. This Court can resolve this issue based solely on the facts of this case and the defendant. Initially, he does not qualify as an individual who was previously denied admission and removed. To determine that, we need to look back to what the law was in 1991, when the defendant was arrested. He was arrested in California, and after that arrest, he was deported from the United States. Now, at the time, in 1991, there was a distinction between people who were arrested and deported and people who were excluded and deported. People who were excluded were individuals who had applied for admission or attempted to enter the United States but had not actually entered the United States. At that point, they were put into proceedings to determine whether they were admissible. If they were not, they were excluded and deported. If an individual was found in the United States, like the defendant was, and arrested, he was not considered to be an applicant for admission. Instead, he was arrested and deported from the United States. Now, one of the things that demonstrates this difference between the two types of people and the two types of proceedings was the burden of proof. If an individual was an applicant for admission to the United States, then the burden was on the applicant to establish that they were admissible. However, if an individual was found in the United States because they were here lawfully, had previously been admitted, or in 1991, someone who had come in illegally and was arrested but was in the United States, the burden was on the United States government to establish that they should be removed or deported from the United States. Now, in 1997, the terms were changed. These were broad changes throughout the immigration statutes, and they changed the term to denied admission. That term is the equivalent of excluded, which is what Section 1326a2b applied to in 1991. It applied to people, only people, who were excluded and deported. When they changed the terms, it now applies to people who were denied admission and removed. The defendant still does not qualify as an individual who was ever an applicant for admission that was denied admission. And this was further recognized. This distinction between the two classes of individuals who could qualify for this defense was recognized by this Court in United States v. Gutierrez-Alba. Could you explain to me what the difference is when they say you have to you're within the 10 years you obtain approval of the attorney general? And are you also inadmissible after the 10 years if you don't obtain the approval? Your Honor. What is the significance of saying you must obtain the approval within 10 years? We're talking about two separate statutes within the code.  Okay, Your Honor. Section 1182 is a statute which sets forth grounds of inadmissibility. Section 1182 only is implicated when a person has applied for admission to the United States. And at the time the defendant was removed from the United States, he fell under the category of individuals who were told you cannot reapply for admission to the  And that was the advance consent of the attorney general. Yes. So if after 5 years, under Section 1182, that ground of inadmissibility would be gone from him. There may be other grounds of inadmissibility that would apply to him. What grounds of inadmissibility? You're talking about not getting the approval of the attorney general. That's correct. That one ground of inadmissibility. So he wouldn't have to do that anymore. To go through the first step of reapplying for admission to the United States. Oh, if he's in year 6, then he might have other hurdles. That's correct. Well, and he still actually has to apply. Anybody might have hurdles. But anyone might have hurdles of all kinds. But as far as somebody who has been deported or removed or excluded, Section 1182 says that you are not you have to get the approval of the attorney general if you want to come now 10 years for somebody who has been deported. It says that they need that approval if they want to even apply for admission to the United States. If they want to come here, they want to be admitted. Within 10 years, they have to get the attorney general's approval. That's correct, Your Honor. And that also means that within 20 years, you have to get the approval? If that's the provision of the statute they fall under, yes, Your Honor. I don't understand. Why does it say you have to get it within 10 years? If you want to return within 10 years, which is the period of your exclusion, you have to get the approval of the attorney general. Your Honor, the United States Congress decided to place this burden on different types of individuals. Could you just answer the question, which is the statute says, 1182, that if you've been deported, you then have to get his approval if you want to return within 10 years. Is that right? That's correct, Your Honor. Then why does that mean that after 10 years, you have to get his approval? After 10 years, to apply for admission to the United States, the defendant would not be required under section 1182 to have the approval of the United States of the attorney general. However, under the criminal code, under section 1326, that the defendant is always required if they want to return to the United States. How can it be that under one section, you don't have to get his approval, but then you're prosecuted for not getting his approval? 1182 tells you when you have to get his approval, and then you say in another section, you can be prosecuted for not getting approval that you're not required to get? Your Honor, under section 1182, that sets forth the civil requirements for entering the United States. All right. So you can enter the United States under the civil system. You don't have to get his approval, but then you're going to be prosecuted for not doing it. No. I mean, one of them isn't the difference that under 1182, it tells you if you want to come back to the United States, these are the things you have to do. And presumably, you go to the embassy, you say I want to come back to the United States, I want to get a visa or whatever. I'm past my 5 or 10 years. I don't need the attorney general's permission. But if you end up here in a criminal situation, in other words, illegally, then 1326 kicks in. Is that correct? That's correct, Your Honor. And that's the one difference is where you ask to come in legally, presumably, and the other is where they, quote, find you. That's correct, Your Honor. But they find you and you didn't have to get the attorney general's approval to come in. If a person did not need the attorney – if under 1182, an individual did not need the attorney general's approval to come in, they still would have faced the requirement of getting a valid visa. And if a person went ahead and got a valid visa and entered the country legally and had complied with all of the requirements under the civil portion, then they would have most likely an affirmative defense to a prosecution under Section 1326. But that is not the case under the facts in this instance. So you're saying that if somebody got a visa and came in, he wouldn't need the approval? If they had waited the time period – Yes, after the 10 years. After the time period and obtained a visa and came in, then, yes, they would have a defense to prosecution under 1326, presumably an entrapment by estoppel defense, so that we couldn't say, well, the United States allowed you to come in, but now we're going to prosecute you. However, again, that is not the facts in this case. So you're saying if you don't get a visa and you're here unlawfully, then you can be prosecuted for not getting permission that you're not required to get? That's correct, Your Honor. And in this case, the defendant not only – even if this time limitation applied to 1326 for someone who was criminally prosecuted, he didn't wait the 5 years that he was required to wait before – I mean, he did not obtain the advanced consent of the Attorney General, and he also didn't wait 5 years before coming back. He was removed – or I should say deported. Then he would be subject to prosecution just for coming in. That's correct, Your Honor. He would be subject to prosecution under Section 1326. It wouldn't matter whether he got approval or – it doesn't matter that he didn't get the approval because he was here unlawfully anyway. That's correct. And the fact of the matter is, is he was still required to have the Attorney General's approval when he came back. He came – he was deported on January 7th, 1991, and he was arrested again in the United States March 18th, 1991. He was arrested on December 3rd, 1991. He was arrested on October 10th, 1993. All of these arrests occurred during that 5-year time period that he was supposed to be – What was he – Can I just ask you, though, on that? He comes in. You're saying he doesn't qualify under B, correct? That's correct, Your Honor. And you're saying he doesn't qualify because he wasn't somebody who was denied admission and removed. Correct, Your Honor. So that it wouldn't matter if you cross that out of the statute and he's just a regular person who has been denied, tries to come back in, and then he is found guilty. He's an individual who was arrested and deported, not an individual who was denied admission, so he doesn't even qualify under Section 1326A to B for the affirmative defense. But what I was – what I'm saying is even if somehow you concluded he did qualify as an individual – But what was he prosecuted for? What entry? I'm sorry, Your Honor. I don't understand your question. Which – At any time? Did they say when the entry occurred? After his – after his previous deportation? No. This crime that he's prosecuted for. He was prosecuted when we found him in 2007. In other words, he went away because he was deported. Then he comes back. They don't have him coming in, so he's not attempting to enter. He just is here. He comes in, and so then he's found here, correct? That's correct. And if he had entered at the time he was prosecuted, it would have been after the 5 years. It would have been after – if he had – if he had been deported in 1991 and remained outside of the country for – until 2007. Then we found him, yeah, say 10 years later. Right. And we found him. He would have been here illegally because he did not obtain a visa, and he still would have been eligible for prosecution under Section 1326. Because under – So the fact that he didn't get the approval of the Attorney General is superfluous. That's correct, Your Honor. Under Section 1326, the requirement is at any time. But again, that's not the facts in this case. In this case, he returned almost immediately after being removed. Is that what he's charged with, returning within 5 years? No, Your Honor. Again, in 1326, there is no time limitation. So he's charged with reentering the United States after being previously deported. So that's what raises the problem, in that this – as far as we know, this charge is that he reentered after the 5 years. No, Your Honor. We have evidence that he was here during the 5 years, that he reentered during the 5 years. And it's somewhat disingenuous, given all of his arrests and his conviction in 1998. I mean, he was here continuously, as far as we can tell. But he was definitely here during the 5-year period. So for him to now say that he qualifies for this defense is incorrect. He did not remain outside the United States for the 5 years after his detention. He did not remain outside the United States for the 5 years after his deportation on January 7, 1991. He was arrested in California three times within 2 years of that deportation. So he doesn't qualify for this defense, even if you – even if you – All that's fine. All I'm trying to find out is what he was prosecuted for. Was it for returning before the expiration of the 5 years? No, Your Honor. Because Section 1326 does not place a time limit. If there are no further questions, I see that my time is almost up. And the government asks that this Court affirm the judgments of the trial court and the defendant's conviction. Thank you. Thank you. Judge Reinhardt, if I may follow up on your last question to the United States, and that is whether Mr. Pérez Pérez was convicted or not. He was accused of coming back to the United States 5 years after the date of his last deportation. And the answer to that is yes. He was last deported in 1991. And the date of his reentry, as stated in the indictment, is in July 3, 2007. He was actually found, as is reflected in the statement of facts, that both I and the United States have provided, crossing the border. Yuma Border Patrol agents found him and 5 or 4 other individuals crossing the desert. And so that is how he was located in the United States right as he was crossing the border. The United States' argument that 1326A to B, the exception there, has no time limitation is disingenuous. And it's disingenuous because Well, now you both said the other is disingenuous. And if I may, Judge Reinhardt, it's for the very point that I believe you were asking Ms. Wu, and that is if 8 U.S.C. 1182A17 has a time limitation by which an alien has to apply for consent back in 1991 being 5 years and now under current law being 10 years, then that has to mean something. And what that has to mean is if an alien stays out the required period of time, then that advanced consent that is stated in the civil portion and the criminal section as well is no longer required. I believe when you look at the forms created by the Immigration Service which implement the law and the regulations of the Immigration and Nationality Act, in this case is Form I-212, which is included in my excerpt of records, it illustrates that very question. And it says as part of the instructions that if you have remained out of the United States for whatever the time period applies to you, whether that's 5 years, 10 years, or 20 years in cases of people with more serious criminal records, you do not need to file this form. And now the government is saying that that and what's stated in the civil sections doesn't matter because the United States is going to prosecute you no matter how long you've stayed outside of the United States, no matter what, if you go to a consulate and the consulate officer says, okay, your last deportation date was 1991. It is now 2007. 16 years have passed. To get to that timing question, we would need to determine that your client falls under the denied admission and removed, correct? My argument is twofold. One is that Mr. Pettis, at first the government did not present evidence of how his removal came to be back in 1991, whether it was that he was excluded and then deported or if he was arrested and deported. All that we had at trial was an I-205 which showed that he was deported. And at this current time, how that occurred is unknown. Secondly, that based on the changes in the Immigration and Nationality Act of 1996 and 1997, there was a push to not make differences between aliens who had been either excluded and deported, but to treat all aliens the same. And so that exception should apply to aliens whether whatever the form of their We'd have to change the words to countenance that argument. Because, I mean, there are some collapsing of categories, but if denied admission and removed is different than the words that go up above which are excluded for example, that's still used. And also just deported which is separate, which may be different than being denied admission. And Judge McKeown, when you're denied admission as Ms. Wu stated, you're not in the United States. You're outside seeking entry. And so you really are not removed because you're never There's some fictions in that, as you know of how you can be here and be denied entry even though you're not. So I see my time is almost up, but So may I ask you, are you assuming that there's a conflict between the two provisions? No, I believe the United States interpretation that there's a conflict is erroneous, but there is not a conflict. That in order for us to know, or for an alien to know, well what do I need to do to avoid prosecution and to find out what advanced consent means how do I get it, do I need it? He or she has to go to the civil portions of the Immigration and Nationality Act because that's where it tells you what you need to do. And I would ask that the Court reverse Mr. Pettis' conviction. Thank you. Thank you, counsel. Case just argued will be submitted
judges: Reinhardt, McKeown, Archer